UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

ADAM WEST,

                           Plaintiff,

             -v-

CITY OF NEW YORK, C.O. RANDAL #9841,

                      Defendants.

-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/28/2014

13 Civ. 5155 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Adam West, proceeding *pro se* and *in forma pauperis*, sues the City of New York (the "City") and Corrections Officer Ginea Randal, alleging, among other things, that she used excessive force against him. The City, although not Randal, now moves to dismiss. For the following reasons, the City's motion is granted, and the Complaint is dismissed as to the City.

I.     Background

A.     Factual Background[1]

West is an inmate on Riker's Island. Compl. at 1. On June 27, 2013, Randal refused to allow West to eat or take a shower. *Id.* at 2–3. As a result, another corrections officer put West in the shower around 2 p.m. *Id.* at 3. When Randal learned that West was in the shower, Randal entered the bathroom, spit in West's face, and sprayed him with mace—also known as OC spray or pepper spray—for approximately 15 seconds. *Id.* Randal then left West in the shower for nearly two hours, *id.*, which aggravated the burning from the mace, *id.* at 5. West also had

---

[1] The Court assumes all facts pled in the Complaint and personal injury claim form, Dkt. 3 ("Compl."), to be true, drawing all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

1

difficulty breathing while attempting to wash off the mace, a problem worsened by his preexisting heart murmur. *Id.* For days afterward, West suffered itching, burning, and skin discoloration on his chest. *Id.* at 3, 5. The prison medical clinic initially instructed West to wash off the mace while in his cell, *id.* at 3, and for two days did not give him medication for his injuries, *id.* at 9 (Personal Injury Claim Form).

On June 28, 2013, the day after the shower incident, corrections officers gave West a "booth visit" even though he had not been caught with any weapons or contraband. *Id.* at 3. From then on, the officers engaged in harassment that included refusing to grant West recreation time, searching West twice a day without cause, making West's visitors wait to see him, and withholding West's mail. *Id.* at 3, 5.

### B.    Procedural Background

On July 17, 2013, West filed a signed and notarized Personal Injury Claim Form with the City. Compl. at 8–12. The City does not dispute receiving this form.

On July 24, 2013, West filed the Complaint. Dkt. 3. The Complaint does not identify particular causes of action. It consists instead of a narrative of the actions that Randal and other, unidentified corrections officers took against West, and of the injuries that West claims to have suffered. Liberally construed,[2] however, the Complaint can be read to allege five distinct constitutional violations that are potentially actionable under 42 U.S.C. § 1983: that (1) Randal used excessive force against West, in violation of the Eighth and Fourteenth Amendments; (2) Randal and other corrections officers failed to furnish West with adequate medical care for his injuries, rising to the level of cruel and unusual punishment in violation of the Eighth and

---

[2] The Court is obligated to construe *pro se* complaints "'to raise the strongest arguments they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)).

Fourteenth Amendments; (3) corrections officers denied West recreation time, in violation of the Eighth and Fourteenth Amendments; (4) the officers searched West without probable cause, in violation of the Fourth and Fourteenth Amendments; and (5) the officers withheld West's mail, depriving him of personal property without due process of law, in violation of the First and Fourteenth Amendments.  West seeks $100,000 in damages.  Compl. at 5.

The Complaint originally named the New York City Department of Correction ("DOC") and Corrections Officer Randal as defendants.  Dkt. 3.  On August 2, 2013, the Court dismissed West's claims against the DOC and added the City as a defendant, on the grounds that the agency cannot be sued in its own name.  Dkt. 6.

On November 1, 2013, the City filed an Answer to the Complaint, Dkt. 12, and on December 23, 2013, Randal did the same, Dkt. 15.  On January 14 and May 13, 2014, the Court appointed limited discovery counsel for both *pro se* plaintiff West and *pro se* defendant Randal. Dkt. 18, 27.

On May 30, 2014, the City moved to dismiss, Dkt. 29, and filed an accompanying memorandum of law, Dkt. 31 ("Def. Br."), and declaration, Dkt. 30.  The City argues there that the Complaint does not allege an official policy or custom, as required to hold a municipality liable for constitutional violations.  Def. Br. 3–4.  On July 9, 2014, West filed an affirmation opposing the motion to dismiss.  Dkt. 35 ("Pl. Opp. Br.").  West stated there, for the first time, that the DOC had failed to properly train Randal and that Randal had been involved in several other incidents before the shower incident.  Pl. Br. at 1.  On August 6, 2014, the City notified the Court that it would not file a reply memorandum.  Dkt. 36.[3]

---

[3] Although Randal sent a letter requesting to file a motion to dismiss on December 23, 2013, Dkt. 14, she never filed such a motion.  The deadline for moving for judgment on the pleadings was May 30, 2014.  *See* Dkt. 24.

## II.   Discussion

### A.   Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Although a district court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

*Pro se* complaints "'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes*, 723 F.3d at 403 (quoting *Triestman,* 470 F.3d at 474).  Courts may not, however, read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127–28 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (citation omitted).  *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

### B.   Adequacy of the Pleading of West's Claims

West's claims are brought under § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established

4

elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  Accordingly, a defendant cannot be held liable under § 1983 absent an "underlying constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

The Court accordingly must determine whether, as to each of the claims it has construed West to make, the Complaint states a cognizable claim.  *See Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 320 (2d Cir. 1999) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("[I]if a plaintiff fails to show that a constitutional violation occurred in the suit against the individual official, the corresponding cause of action against the municipality will be mooted since a claim of [municipal liability] is only actionable where some constitutional violation actually occurred.").  In addition, because West brings suit against the City, the Court must determine whether the allegations in the Complaint satisfactorily allege municipal liability, to wit, that the plaintiff's injuries derived from an officially adopted policy or custom.  *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights").  The Court here addresses the adequacy of the pleading of West's claims, and addresses in the following section whether West's Complaint comports with *Monell*.

### 1.     Excessive Force

The Court construes West first to allege that Randal used excessive force against him. The "'unnecessary and wanton infliction of pain' on a prisoner constitutes cruel and unusual punishment in violation of the Eighth Amendment" as incorporated against the states by the Fourteenth Amendment.  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir 1997) (quoting *Whitley*

*v. Albers*, 475 U.S. 312, 319 (1986)).  There are two elements of such an Eighth Amendment

violation.  First, the punishment inflicted must have been "'objectively, sufficiently serious.'"

*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Second, the corrections officer must

have had a "'sufficiently culpable state of mind.'"  *Id.* (quoting *Farmer v. Brennan,* 511 U.S. at

834).  A corrections officer violates the Eighth Amendment when force is applied "'maliciously

and sadistically to cause harm'" rather than "'in a good-faith effort to maintain or restore

discipline.'"  *Hogan v. Fischer*, 738 F.3d 509, 516 (2d Cir. 2013) (quoting *Hudson v. McMillian*,

503 U.S. 1, 6–7 (1992)).  If "'no legitimate law enforcement or penological purpose can be

inferred from the defendant's alleged conduct, the abuse itself may . . . be sufficient evidence of

a culpable state of mind.'"  *Id.* (quoting *Boddie*, 105 F.3d at 861).

Here, West alleges that Randal sprayed him with mace for approximately 15 seconds

because another corrections officer had allowed him to take a shower.  As alleged, the prolonged

spraying resulted in difficulty breathing, severe itching and burning, and skin discoloration.

These factual allegations adequately plead both elements of an Eighth Amendment claim.  First,

the punishment inflicted is objectively serious.  Although the "immediate discomfort" caused by

mace does not typically constitute excessive force, courts in this Circuit have found unnecessary

and wanton infliction of pain when a plaintiff alleges "injuries from being sprayed," as West

does here.  *Brown v. Banks*, No. 06 Civ. 14304 (LTS) (HBP), 2008 WL 3833227, at *2

(S.D.N.Y. Aug. 14, 2008) (citation omitted); *see also, e.g.*, *Lewis v. Clarkstown Police Dep't*,

No. 11 Civ. 2487 (ER), 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014); *Cunninham v. New

York City*, No. 04 Civ. 10232 (LBS), 2007 WL 2743580, at *6–7 (S.D.N.Y. Sept. 18, 2007).

Second, the assault, as alleged, lacked any legitimate purpose.  Even if West had disobeyed

Randal's orders, the use of the artillery of mace, on the facts pled, was unnecessary to restore

6

discipline.  In light of this lack of evident justification, West has adequately pled that Randal, in spraying him with mace while he was showering, acted with a sufficiently culpable state of mind.  *See, e.g.*, *Hogan*, 738 F.3d at 516 (finding that prison officials had a sufficiently culpable state of mind where they approached plaintiff's cell "for the sole purpose of assaulting him with feces, vinegar, and oil").  The Complaint therefore adequately alleges an Eighth Amendment violation based on Randal's use of excessive force.

### 2.   Inadequate Medical Care

The Court construes West to allege deliberate indifference to his serious medical needs, an independent violation of the Eighth and Fourteenth Amendments.  To establish such a claim, West must satisfy two requirements:  "The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The second requirement . . . is subjective: the charged official must act with a sufficiently culpable state of mind."  *Id.* at 280 (citing *Wilson*, 501 U.S. at 300).

In general, "delay in medical treatment by itself cannot violate the Eighth Amendment." *Arnold v. Westchester Cnty.*, No. 09 Civ. 3727 (JSR) (GWG), 2012 WL 336129, at *13 (S.D.N.Y. Feb. 3, 2012) (collecting cases).  However, "[a]n intentional delay in necessary medical care, amounting in effect to a form of punishment, is actionable."  *Id.* (citation omitted); *see also, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (Eighth Amendment is violated "by prison guards in intentionally denying or delaying access to medical care"); *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984) ("[I]f defendants did decide to delay emergency medical aid— even for 'only' five hours—in order to make [plaintiff] suffer, surely a claim would be stated under *Estelle*."); *Laster v. Mancini*, No. 07 Civ. 8265 (DAB), 2013 WL 5405468, at *21

(S.D.N.Y. Sept. 25, 2013) ("Courts have declined to dismiss deliberate-indifference claims as a matter of law where plaintiffs have alleged a delay in medical treatment causing substantial pain, even when the injuries alleged were not life-threatening and the delay was relatively brief.").

The facts pled here are sufficient to support a finding of deliberate indifference. West alleges that after Randal sprayed him with mace, she and other corrections officers left him in the shower for approximately two hours. During this time, West was coughing and struggling to breathe; his skin was burning; and he may have been suffering complications related to his preexisting heart murmur. Although the Complaint acknowledges that West received medical attention that day and again two days later, the two-hour delay plausibly satisfies both elements of the Eighth Amendment inquiry: First, objectively, the delay caused West substantial pain. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) ("[W]e have long held that 'the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'") (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)). Second, as pled, the motivation for the delay was punitive. West alleges that Randal delayed his access to medical care for the sole purpose of extending his suffering. *See Archer*, 733 F.2d at 16. Such conduct is fairly argued to be "repugnant to the conscience of mankind," *Estelle*, 429 U.S. at 105 (citations omitted), and is consistent with a sufficiently culpable state of mind. The Complaint therefore states a plausible claim of deliberate indifference to West's serious medical needs, in violation of the Eighth and Fourteenth Amendments.

### 3.    Recreation Time

The Complaint further alleges that, after the shower incident, the corrections officers denied West recreation time. Courts have recognized that "exercise is one of the basic human

needs protected by the Eighth Amendment," and so "'some opportunity to exercise must be
afforded to prisoners.'" *Williams v. Goord*, 142 F. Supp. 2d 416, 428 (S.D.N.Y. 2001) (quoting
*Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996)).  "Denial of a prisoner's recreation
privileges for an extended period of time violates the Eighth Amendment if the denial results in a
deprivation 'of the minimal civilized measure of life's necessities' and the defendants act with a
sufficiently culpable state of mind amounting to deliberate indifference to a serious need."
*Beckford v. Portundo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) (quoting *Rhodes v. Chapman*,
452 U.S. 337, 347 (1981)).  However, under this standard, courts have found Eighth Amendment
violations based on denials of recreation only in extreme circumstances—for instance, when an
inmate was denied "all meaningful opportunity for exercise" for three-and-a-half years.  *See*
*Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted); *see also Davidson v.*
*Coughlin*, 968 F. Supp. 121, 129 (S.D.N.Y. 1997) (collecting cases).

      The sparse facts alleged here fall short of that standard.  The Complaint does not allege
"the duration of the deprivation," "the extent of the deprivation," "the availability of other out-
of-cell activities," or "the opportunity for in-cell exercise."  *Davidson*, 968 F. Supp. at 130; *see*
*also Williams*, 142 F. Supp. 2d at 425.  Significantly, the Eighth Amendment "stands as a barrier
against fundamental and shocking indecency to those whom the state has chosen to confine for
their crimes," but it does not require any particular form of recreational privileges.  *Anderson v.*
*Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985).  Absent specific factual pleadings that demonstrate
deprivations on such a scale, the allegations in the Complaint regarding West's recreation do not
establish a constitutional violation.

### 4.     Unjustified Searches

The Court has also construed West to claim that, after the shower incident, he was

subjected to an unjustified "booth visit" and unjustified twice-daily searches.  It is well-

established, however, "that prisoners have no legitimate expectation of privacy and that the

Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."

*Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  As such, inmates do not have the right to be free

from searches of any kind; even searches conducted "solely for harassment" do not implicate the

Fourth Amendment.  *Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir. 2002) (citing *Hudson*, 486 U.S. at

526); *see also, e.g.*, *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005)

("[Defendant] correctly asserts that [plaintiff] had no constitutional right to be free from cell

searches of any kind, including retaliatory cell searches."); *Salahuddin v. Mead*, No. 95 Civ.

8581 (MBM), 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases holding that

even "arbitrary" or "retaliatory" searches in prisons do not implicate constitutional rights).

Rather, unjustified searches of an inmate's person or prison cell violate the Constitution only

when the searches harm the inmate so severely as to constitute cruel and unusual punishment

within the meaning of the Eighth Amendment.  *See Harris v. Fischer*, No. 11 Civ. 6260 (CM)

(JLC), 2014 WL 3859242, at *18 (S.D.N.Y. Aug. 1, 2014).  Here, the Complaint alleges only

that the searches were "annoy[ing]" and sometimes required waking West up in the morning or

afternoon.  Compl. at 5.  Such facts, without more, do not establish a constitutional violation.

### 5.     Withheld Mail

West's final allegation is that corrections officers failed to deliver his mail—specifically,

mail sent by West's family—for several weeks.  The Court construes this claim to allege both a

deprivation of personal property without due process of law in violation of the Fourteenth

Amendment, and an act of interference with West's mail in violation of the First and Fourteenth Amendments. The facts alleged fail to make out a cognizable claim under either theory.

As to the due process claim, even "an unauthorized intentional deprivation" of property does not give rise to a constitutional claim if "adequate state post-deprivation remedies are available." *Hudson*, 468 U.S. at 533. Failure to pursue an available state remedy precludes relief under § 1983. *See Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 1700.3(b)(4)." *Id.* (citing *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (per curiam); *Love v. Coughlin*, 714 F.2d 207, 208–09 (2d Cir. 1983) (per curiam)). Accordingly, even accepting the facts alleged in the Complaint as true, the deprivation of West's property interest in his mail is not a cognizable constitutional injury.

Alternatively, the First Amendment protects "a prisoner's right to the free flow of incoming and outgoing mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *see also Davidson v. Scully*, 694 F.2d 50, 53 (2d Cir. 1982) ("The state's evanescent security interests defended here hardly justify infringement of so basic a right as the right to receive and send mail.") (citation omitted). In general, courts "afford[] greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351. To date "the Second Circuit has not articulated the contours of the test for *non-legal* mail." *Harris*, 2014 WL 3859242, at *24. But even in the context of legal mail, which merits heightened protection, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citing *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975); *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). Instead, a

plaintiff must prove that corrections officers "regularly and unjustifiably interfered" with his mail. *Id.* (citations omitted).  Where an inmate alleges only a few instances of mail tampering, he must further allege invidious intent or actual harm. *Id.* (collecting cases).

The sparse allegations in the Complaint fall short of this standard.  West does not allege how many times the corrections officers withheld mail from his family, whether the mail was stolen or merely delayed, whether the officers withheld his outgoing mail or incoming mail from other senders, or whether the interference with his mail caused him concrete harm.  Accordingly, the Complaint alleges no more than isolated incidents of error or malfeasance, which, as noted, do not constitute First or Fourteenth Amendment violations actionable under § 1983.

### C.    Adequacy of West's Pleading of Municipal Liability

For the reasons noted, the Complaint plausibly alleges two constitutional violations by Randal: (1) the use of excessive force when she sprayed West with mace without any justification, and (2) deliberate indifference to West's serious medical needs when she failed to procure medical attention for West for at least two hours.  The City, however, moves to dismiss these claims against it, on the grounds that West has not pled facts under which it can be held liable for Randal's acts.

Under § 1983, municipalities are not vicariously liable for their employees' actions. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  To state a claim against a municipality, the plaintiff must allege that an officially adopted policy or custom caused his injury.  *See Monell*, *supra*; *Bryan Cnty.*, *supra*.  A single incident is "not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Okla. City*, 471 U.S. at 823–24; *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *cert. denied*, 520

U.S. 1117 (1997) (municipal liability cannot be "predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). That West is *pro se* does not relieve him of the duty to adequately plead the elements of a municipal liability claim. *See Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011) (affirming dismissal of *pro se* plaintiff's *Monell* claim where "the complaint does not allege facts sufficient to show that 'the violation of his constitutional rights resulted from a municipal custom or policy'") (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

Here, the Complaint falls far short of what *Monell* and its progeny require. It does not, in any way, allege or even suggest "that there was a persistent and widespread unconstitutional governmental policy or custom," that a City "policymaker approved any constitutional violation," or that the City's "failure to train its employees amounted to deliberate indifference to constitutional rights." *Carter v. Inc. Vill. of Ocean Beach*, No. 13 Civ. 815, 2014 WL 3561247, at *4 (2d Cir. July 21, 2014).

In his opposition to the City's motion to dismiss, West contends for the first time that the DOC "failed to give [Randal] the proper training for her job" and that Randal had "been in several harassment incidents in the past." Pl. Opp. Br. at 1. However, even if construed as part of the Complaint, these vague and conclusory statements, taken as true, would not establish municipal liability. To state a *Monell* claim premised on failure to train, a plaintiff must allege "[a] pattern of similar constitutional violations by untrained employees" that amounts to "deliberate indifference." *Connick*, 131 S. Ct. at 1360. The pattern must be so widespread as to put policymakers "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* West's

submissions neither detail a pattern of prior bad acts by Randal nor identify a deficiency in the City's training program.  Accordingly, West's claims against the City must be dismissed.

### III.    Next Steps

For the reasons stated above, the Court dismisses all claims against the City based on the Complaint's failure to plead municipal liability, and also *sua sponte* dismisses the Complaint's claims against Randal of constitutional violations with respect to elimination of recreation time, unjustified searches, and withheld mail.  However, the Complaint's claims against Randal of excessive force and of deliberate indifference to medical needs, each construed as brought under the Eighth and Fourteenth Amendments, survive.

A *pro se* litigant should be afforded at least one opportunity to amend his complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citations omitted).  The Court ought not dismiss a complaint for failure to state a claim unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam).  Particularly where a *pro se* litigant brings a civil rights action, he should be afforded leave to amend his complaint "fairly freely." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990) (citations omitted).

The Court will afford West this opportunity.  West has been engaged in discovery with the aid of limited pro bono counsel for several months but has not yet amended his Complaint.  Given leave to amend, it is conceivable that West will be able to fortify his factual allegations so as to (1) plead viable claims regarding loss of recreation time, unjustified searches, and deprivation of mail, and/or (2) satisfy the requirements of *Monell* and state a claim against the

City.  The Court will afford West 45 days from the date of this decision in which to do so.  West is advised not to expect a further opportunity to amend his Complaint.

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, the Court dismisses without prejudice West's claims against the City, and his claims against Randal with respect with to loss of recreation time, unjustified searches, and deprivation of mail.  The Court grants West leave to file an amended complaint. Any such Complaint must be filed by October 13, 2014.  Failure to file an amended complaint by that date, absent leave of the Court, will result in the Court's converting this dismissal of claims without prejudice into a dismissal with prejudice.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 29 and to serve this Opinion and Order on West at his address of record.

SO ORDERED.

_Paul A. Engelmayer_
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: August 28, 2014
       New York, New York